IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ANDRE JACOBS,                    )
                                 )
            Plaintiff,           )
                                 )
       v.                        )   Civil Action No. 04-1592
                                 )
SCOTT CARLSON, et al.,           )
                                 )
            Defendants.          )

MEMORANDUM OPINION AND ORDER

CONTI, District Judge.

On March 10, 2009, the jury returned a verdict in favor of defendants Scott Carlson ("Carlson"), Gregory Giddens ("Giddens"), Ronald Collings ("Collings"), and Earnest Hall ("Hall," and together with Carlson, Giddens, and Collings, "defendants"), and against plaintiff Andre Jacobs ("Jacobs" or "plaintiff") on all counts. On March 18, 2009, Jacobs filed three motions: (1) motion for trial transcripts (Docket No. 211), (2) motion for new trial pursuant to Federal Rule of Civil Procedure 59(a) (Docket No. 212), and (3) motion for relief from judgment or new trial pursuant to Federal Rule of Civil Procedure 60(b) (Docket No. 214). On June 1, 2009, Jacobs filed a supplemental motion for new trial and/or request for sanctions pursuant to Federal Rules of Civil Procedure 37, 59, and 60 (Docket No. 221).

As a preliminary matter, the motion for trial transcripts will be granted. Payment for the cost of producing the transcripts is to be made from the court's pro hac vice fund. If plaintiff is successful in this case and receives funds from defendants, plaintiff is responsible for paying back the cost of the transcripts. With respect to the remaining motions, the court will deny those motions for the reasons set forth below.

**I. Background**

Plaintiff's action arose from events occurring on February 24, 2004, at SCI Fayette. (Br. in Supp. of Pl.'s Mot. for New Trial 1 (Docket No. 213.)) The events at issue with respect to the pending motions concern Cell 23 and Cell 10-11 of SCI Fayette. Cell 23 was where plaintiff was found to have assaulted defendant Carlson, and Cell 10-11 was where plaintiff was sprayed with Oleoresin Capsicum Spray ("OC") after he refused to comply with an order. The events with respect to Cell 10-11 were recorded on videotape.

**II. Rule 59 Motions**

　　**A. Standard of Review**

　　Federal Rule of Civil Procedure 59(a) provides, in relevant part:

> A new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . .

FED. R. CIV. P. 59(a). Rule 59(a) does not set forth specific grounds on which a court may grant a new trial. "The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court." Blancha v. Raymark Indus., 972 F.2d 507, 512 (3d Cir. 1992)

(citing Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980)); see Coney v. NPR, 312 F. App'x 469, 471 (3d Cir. 2009).

The scope of a district court's discretion in evaluating a motion for a new trial depends upon whether the motion is based upon a prejudicial error of law or a verdict alleged to be against the weight of the evidence. See Klein v. Hollings, 992 F.2d 1285, 1289-90 (3d Cir. 1993). When the motion involves a matter within the sound discretion of the trial court – such as the court's evidentiary rulings, points of charge to the jury, or a prejudicial statement made by counsel – the district court has wide latitude in ruling on the motion. Foster v. Nat'l Fuel Gas Co., 316 F.3d 424, 429-30 (3d Cir. 2003).

**B. Discussion**

In his motions filed pursuant to Rule 59, plaintiff argues that a new trial is warranted for three reasons. First, plaintiff argues that he was improperly prevented from introducing evidence about the effects of OC on other inmates. (See Pl.'s Mot. for New Trial (Docket No. 212).) Second, plaintiff argues that the court incorrectly ruled that collateral estoppel prevented him from introducing evidence concerning specific events that took place in the course of his altercation with defendants in Cell 23. (See id.) Third, plaintiff argues that counsel for defendants lied to him in telling him that the Pennsylvania Department of Corrections (the "DOC") does not have a system tracking complaints raised by inmates against DOC employees. (See Pl.'s Supplemental Mot. for New Trial (Docket No. 221).) Each argument will be addressed.

**1. Evidence on the Effects of OC Spray**

Plaintiff argues that because he was prevented from introducing evidence at trial on the issue of the dangerousness of OC, he was unable to show effectively that the use of OC was

3

excessive force under the circumstances, and, therefore, could not prove defendants' subjective state of mind.  Plaintiff's evidence on this point consisted of witnesses who sought to testify that they had been harmed by OC without being directly sprayed with it, simply by being in the vicinity when it was used.  At trial the court sustained defendants' relevancy objection and did not permit plaintiff to introduce that kind of evidence.  The court concluded that any limited probative value the evidence might have was substantially outweighed by the risk of unfair prejudice to defendants.

Relevant evidence is defined by Federal Rule of Evidence 401, which provides that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401.  All relevant evidence will be admissible unless it is excluded by another rule of evidence.  United States v. Siryuth, 98 F.3d 739, 745 (3d Cir. 1996).  Under Federal Rule of Evidence 403, relevant evidence will be excluded if the court determines that the risk of unfair prejudice to a party substantially outweighs the probative value of the evidence. FED. R. EVID. 403.

At trial, the court instructed the jury that in order to reach a verdict in favor of Jacobs the jury was required to find that defendants used force against Jacobs for the purpose of causing harm, rather than in a good faith effort to carry out their duties as corrections officers.  The court noted that relevant facts to this determination included: whether the defendants each used force against the plaintiff; whether there was a need for such application of force (i.e., in the incident in cell 23); whether there was a need for the application of force by defendants after plaintiff assaulted defendant Carlson; the relationship between that need for force, if any, and the amount of force applied; the relevant facts and circumstances defendants individually reasonably

believed to be true at the time of the encounter; whether defendants individually reasonably perceived a threat to the safety of staff or inmates, and if so, the extent of that threat; whether each of the defendants made any efforts to temper the severity of the force used; and whether plaintiff was physically injured and, if so, the extent of plaintiff's injuries.

Plaintiff argues that the evidence he sought to offer was relevant to the determination whether the force used was reasonable under the circumstances, because the evidence would demonstrate that the OC used was so potent that it could harm other prisoners who were not directly sprayed with it. Defendants argue that the witnesses in question did not testify to the effects of OC on that specific instance, but rather to the effects of OC generally, that the testimony was inflammatory and prejudicial, and that it was not relevant to the determination whether the force used in the specific instance at hand was reasonable.

This issue was raised and resolved by the court during the trial, and the court is not inclined to reconsider its ruling under the circumstances.[1] The court is not aware of any law or argument not already considered in reaching the conclusion to not permit the introduction of that evidence. The court notes that the effect of second hand OC on other prisoners from the perspective of those prisoners will not show defendants' state of mind at the relevant time or the effect of the OC on plaintiff in this particular instance. The proposed evidence offered by

---

[1] Plaintiff did not file a motion for reconsideration, but rather filed a motion for a new trial. Plaintiff, however, is in essence requesting that the court reconsider its ruling that precluded plaintiff from introducing the testimony of witnesses who were harmed by OC on other occasions, although they were not directly sprayed by it. A motion for reconsideration is granted only if one of three situations is shown: "(1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice." Reich v. Compton, 834 F. Supp. 753, 755 (E.D. Pa. 1993).

> Because of the interest in finality, at least at the district court level, motions for reconsideration should be granted sparingly; the parties are not free to relitigate issues the court has already decided. . . . Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly.

Williams v. Pittsburgh, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998). Plaintiff does not argue that new evidence is available or that there is a change in the controlling law.

plaintiff would only show the effects of OC on certain other prisoners, and not what the effects were on plaintiff during the incident in question. In addition, plaintiff did not proffer that defendants were involved in administering the OC to the other prisoners or that defendants were aware of the effect of the OC on the other prisoners. The undisputed evidence at trial showed that plaintiff was directly sprayed with OC, and plaintiff testified about the effects the OC upon him. Plaintiff introduced evidence of a video recording of the use of the OC on him, his own testimony and the testimony of eyewitnesses with respect to the immediate effect of the OC upon plaintiff, as well as the residual effects of OC remaining on his skin. As the court set forth on the record, the proffered testimony had little relevance, and could unfairly prejudice defendants.

For the reasons set forth above and on the record at trial, the court was within its discretion in precluding the introduction of this evidence, and plaintiff was not prejudiced by the exclusion of that evidence.

### 2. Collateral Estoppel

Prior to this action, plaintiff was convicted in state court of criminal assault, attempted criminal assault, and aggravated criminal assault for striking Carlson, a corrections officer ("CO"), and attempting to strike other COs. The altercation which resulted in the assault conviction, which was the incident in Cell 23, was one of a series of events implicated in the present action. At trial, the court allowed evidence with respect to the kind of force used by COs after the altercation.

Defendants argued at trial that because plaintiff was convicted of assaulting or attempting to assault Carlson in the course of certain of the events that were raised at trial, collateral estoppel prevents plaintiff from bringing this action, since the previous action necessarily determined that it was plaintiff who assaulted Carlson, not the other way around. The court

rejected defendants' argument, because the issues involved in plaintiff's criminal conviction concerned more than just a simple question of who assaulted whom.  While a civil jury in this case could not revisit the issue whether plaintiff assaulted Carlson, the conduct of the COs after the assault was not resolved in this earlier criminal trial.  The issue whether the COs used excessive force after Jacobs assaulted Carlson was a matter the civil jury could consider.  The court, however, did not permit plaintiff to testify about facts that were inconsistent with the finding by the criminal jury that it was plaintiff who assaulted Carlson.  In other words, plaintiff could not testify that the COs assaulted him.  This ruling was in part based upon Heck v. Humphrey, 512 U.S. 477 (1994).  In that case, the United States Supreme Court held that § 1983 claims are precluded if the success of the claims "would necessarily imply the invalidity" of conviction that has not "been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 487.

A federal court considering the preclusive effect of a prior state law criminal action should apply the law of that state.  Anela v. City of Wildwood, 790 F.2d 1063, 1068 (3d Cir. 1986). The doctrine of collateral estoppel applicable in Pennsylvania prevents a party from relitigating an issue which was decided in a previous action. It applies in a situation where:

> 1) the issue decided in the prior adjudication was identical with the one presented in the later action, 2) there was a final judgment on the merits, 3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication, 4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

Shaffer v. Smith, 673 A.2d 872, 874 (Pa. 1996) (quoting Safeguard Mut. Ins. Co. v. Williams, 345 A.2d 664, 668 (Pa. 1975)).  "It is well established that a criminal conviction collaterally estops a defendant from denying his acts in a subsequent civil trial."  Shaffer, 673 A.2d at 874.

There was no dispute in this case about the second, third and fourth elements. Collateral estoppel was asserted against Jacobs who was a party to the previous action, he had a full and fair opportunity to litigate in the prior action, and the prior action was decided on the merits. The only matter for the court to determine was the precise nature of the issue decided by the criminal jury which Jacobs would be precluded from relitigating in the present case.

At his criminal trial, Jacobs was convicted of (1) simple assault, (2) aggravated assault; (3) attempted simple assault; and (4) attempted aggravated assault of Carlson. Conviction on these counts required findings by the jury that:

- Jacobs caused bodily injury to Carlson;

- Jacobs caused this bodily injury intentionally, knowingly or recklessly;

- Jacobs took action which was a substantial step towards causing bodily injury;

- Jacobs caused, and took action which was a substantial step towards causing, bodily injury to a CO while the CO was engaged in the performance of a duty of occupation (hence the aggravated assault charges).

(Defs.' Rule 50 Mot. to Exclude from Trial the Allegation of Assault (Docket No. 193), Ex. B at 131-35; see 18 PA. CONS. STAT. §§ 2701-02.)

At the criminal trial, Jacobs asserted the defense of justification. (Defs.' Rule 50 Mot. to Exclude from Trial the Allegation of Assault, Ex. B at 134-35.) In order to prove the defense of justification, a defendant must establish that he or she reasonably believes under all the circumstances that the use of force is immediately necessary to protect himself or herself. 18 PA. CONS. STAT. § 505. The criminal jury rejected Jacobs' defense of justification to the assault charges. (Defs.' Rule 50 Mot. to Exclude from Trial the Allegation of Assault, Ex. B at 140-47.)

As set forth on the trial record, the court determined that plaintiff under the doctrine of collateral estoppel was precluded from relitigating these issues in the present action and from testifying or entering into evidence any testimony inconsistent with the findings of the criminal jury. Plaintiff claims in the present motion that the court incorrectly limited his testimony and the testimony of his witnesses. Specifically, plaintiff disagreed with the court's decision to prohibit plaintiff or his witnesses from testifying that Carlson and Hall *attacked* plaintiff *before* plaintiff assaulted Carlson.

The court did not abuse its discretion in disallowing this kind of testimony. The criminal jury rejected plaintiff's argument that Carlson and Hall were the initial aggressors in the incident when they rejected his defense of justification. Under the circumstances presented in this case, if the criminal jury believed plaintiff's testimony that Carlson and Hall entered his cell and attacked him, before plaintiff struck Carlson, they would have been required to find that plaintiff was justified in using force to protect himself, and plaintiff would have been acquitted. Plaintiff was, therefore, precluded from entering evidence or testifying that Carlson and Hall attacked him prior to plaintiff assaulting Carlson. Plaintiff's motion for a new trial based upon alleged error in applying the doctrine of collateral estoppel is denied.[2]

Plaintiff argues that this case is similar to Gilbert v. Cook, 512 F.3d 899 (7th Cir. 2008). In Gilbert, the defendants escorted plaintiff, an inmate at a state correctional institution, to his cell. Once at the cell, the door was locked and the plaintiff was instructed to place his arms in the chuckhole, which was an opening that could be used to cuff and uncuff prisoners. While the defendants were removing the cuffs, the plaintiff was able to punch one of the defendants. The

---

[2] In plaintiff's motion for a new trial, he requests that the court reconsider its evidentiary ruling with respect to the assault conviction. As explained in footnote 1, supra, a motion for reconsideration is granted only if the movant can demonstrate: "(1) the availability of new evidence not previously available, (2) an intervening change in controlling law, or (3) the need to correct a clear error of law or to prevent manifest injustice." Reich, 834 F. Supp. at 755. Again, plaintiff does not argue that new evidence is available or that there is a change in the controlling law.

9

defendants "raised the ante by wrenching [the plaintiff]'s left arm, using it as a lever and the edge of the chuckhole as the fulcrum"; this caused the plaintiff to suffer several injuries. Id. at 900. A prison disciplinary board determined that the plaintiff punched the defendants, and under the principles set forth in Heck (which were extended to decisions made by prison disciplinary tribunals in Edwards v. Balisok, 520 U.S. 641 (1997)), the plaintiff could not challenge this finding. The plaintiff sued to recover damages for the injuries he suffered, alleging that his Eighth Amendment rights were violated. Gilbert, 512 F.3d at 900. At trial, the plaintiff, who was representing himself pro se, wanted to tell the entire story from his perspective. He denied punching the defendants. The judge insisted, however, that the plaintiff not contradict the board's findings. The plaintiff struggled to comply:

> In response to the magistrate judge's insistence that he not contradict the board's decision, however, [the plaintiff] attempted to present his claim without either contesting or accepting the board's finding. Given the board's (incontestable) finding, [the plaintiff] had to argue that the guards wrenched his arm out of its socket in retaliation for an act that [the plaintiff] neither concedes nor denies. This would be a difficult task for a lawyer and was even more difficult for a poorly educated layman-as [the plaintiff], who has been in prison since he was 14, could not find a lawyer willing to represent him, and the magistrate judge declined to recruit counsel on his behalf. [The plaintiff]'s struggle to proceed without confessing that he had punched a guard frustrated the magistrate judge; the judge's effort to enforce the rule of Heck and Edwards frustrated and confused [the plaintiff].

Id. at 901. The judge ultimately directed the plaintiff "not to present any evidence about what happened after he reached the top of the stairs (which is to say, after he returned to his cell)." Id. The plaintiff rested, and the trial court granted a Rule 50 motion filed by the defendants. Id.

The Court of Appeals for the Seventh Circuit observed that the plaintiff asserted a legitimate claim whether the force used by the defendants was unreasonable under the circumstances:

10

> Just as Wallace v. Kato, [549 U.S. 384 (2007)], holds that Heck does not affect litigation about police conduct in the investigation of a crime, so we hold that Heck and Edwards do not affect litigation about what happens after the crime is completed. Public officials who use force reasonably necessary to subdue an aggressor are not liable on the merits; but *whether* the force was reasonable is a question that may be litigated without transgressing Heck or Edwards.

Id. at 901.

The Court of Appeals for the Seventh Circuit noted that the trial court did not disallow the plaintiff's evidence with respect to what happened at the cell on the basis of a sanction for disobeying the court's orders. Id. at 902. The court of appeals reversed and remanded, holding that the trial court must permit the plaintiff to present evidence about what the defendants did to him after his arms were through the chuckhole:

> Instead of insisting that [the plaintiff] confess in open court to striking a guard, the judge should have implemented Heck and Edwards through instructions to the jury at the start of trial, as necessary during the evidence, and at the close of the evidence. It would have sufficed to tell the jurors that [the plaintiff] struck the first blow during the fracas at the chuckhole, that any statements to the contrary by [the plaintiff] (as his own lawyer) or a witness must be ignored, and that what the jurors needed to determine was whether the guards used more force than was reasonably necessary to protect themselves from an unruly prisoner.
>
> This case must be retried, and Gilbert must be allowed to present evidence about what the guards did to him after he extended his hands through the chuckhole.

Id.

This court's ruling is distinguishable from the trial court's ruling in Gilbert that was reversed by the Court of Appeals for the Seventh Circuit. Here, in attempting to establish that the force used by defendants in response to Jacobs' assault of Carlson was unreasonable, Jacobs was permitted to present evidence about what happened after the assault. In Gilbert, by contrast,

11

the plaintiff was effectively precluded from presenting evidence with respect to what happened after he threw a punch. Jacobs' reliance on Gilbert, therefore, is misplaced.

### 3. DOC Records

Plaintiff asserts that during the litigation of this case, the contents of defendants' disciplinary files maintained by the DOC were at issue. Plaintiff argues that every time the issue arose, counsel for defendants represented that "the DOC does not have a system of tracking complaints against prison staff by prisoners." (Pl.'s Supplemental Mot. for a New Trial (Docket No. 221) ¶ 1.) Plaintiff argues that counsel stated:

> that the DOC's automated grievance tracking system only records grievances filed by prisoners but is not guard-specific. Allegedly, the DOC cannot punch a guard's name in the computer and view/printout all prisoner grievances against that specific guard. Instead, they alleged, they would have to search all of the grievances filed by prisoners generally and search for the guard's name in each grievance.

(Id. ¶ 3.) Plaintiff alleges that counsel's representations are lies, because there exists a database that can be searched for individual prison staff members, and a print-out of all complaints raised against that staff member can be generated.

Plaintiff misconstrues the statements made by counsel for defendant. The very exhibit attached to plaintiff's motion, (id., Ex. A), demonstrates plaintiff's misunderstanding. Counsel for defendants represented that it was possible to obtain a "log" of grievances raised against a DOC employee, but the logs in all likelihood fail to reflect accurately the grievances raised against the employee:

> [t]here is no well-established system in place to track and/or retrieve grievances filed against DOC employees. The grievance officers at each Institution can try to log all grievances filed against their employees but given the overwhelming number of grievances filed and the grievance officers' other duties this is rarely done. Some grievance officers log no grievances at all, others log some,

> and none log all. Whatever list could be generated is useless as it would be inaccurate. When the Defendants stated years ago that the grievances could not easily be retrieved nor are kept in a manner which would permit retrieval they were not, as Plaintiff states, "lying."

(Id., Ex. D.) Plaintiff's evidence that purportedly proves the existence of a searchable database is entirely consistent with the statement made by counsel for defendants. Since there is no evidence of a lie or fraud on the part of counsel for defendants, the court concludes that there is no basis for granting plaintiff a new trial.

### III. Rule 60 Motions

In two of plaintiff's motions, he seeks relief pursuant to Federal Rule of Civil Procedure 60. The one motion simply cites Rule 60 (Pl.'s Supplemental Mot. for New Trial (Docket No. 221), and the other motion specifically mentions Rule 60(b)(1) and (3) (Pl.'s Mot. for New Trial Based on Surprise and Fraud by Opposing Party (Docket No. 214)).

**A. Standard of Review**

"Rule 60 is the vehicle by which relief from a judgment can be obtained in district court." Lindy Investments III v. Shakertown 1992 Inc., No. 08-30908, 2010 WL 10921, at *1 (5th Cir. Jan. 4, 2010). "The remedy provided by Rule 60(b) is 'extraordinary, and special circumstances must justify granting relief under it'." Moolenaar v. Gov't of the Virgin Islands, 822 F.2d 1342, 1346 (3d Cir. 1987) (quoting Page v. Schweiker, 786 F.2d 150, 158 (3d Cir. 1986)). Subsection (b)(1) allows a party to ask the court for relief from a final judgment based upon mistake or surprise, and subsection (b)(3) allows a party to request relief from a final judgment based upon fraud by the opposing party. FED. R. CIV. P. 60(b). Although plaintiff cites Rule 60(b)(1), plaintiff's arguments focus upon an alleged "fraud[] on the court," and thus the court will focus

upon Rule 60(b)(3).³  (Pl.'s Mot. for New Trial Based on Surprise and Fraud by Opposing Party (Docket No. 214) ¶ 3; see Pl.'s Supplemental Mot. for a New Trial (Docket No. 221) ¶¶ 1-2 (referring to counsel for defendants as "complete liars" and alleging they committed "additional fraud").)

In order to prevail under Rule 60(b)(3), plaintiff must demonstrate that the adverse party engaged in fraud or other misconduct, and also that this misconduct prevented plaintiff from adequately presenting his case.  Stridiron v. Stridiron, 698 F.2d 204, 206-07 (3d Cir. 1983).

**B. Discussion**

In Jacobs' two motions brought pursuant to Federal Rule of Civil Procedure 60, he asserts two bases upon which he believes he is entitled to relief.  First, plaintiff alleges that defendants altered some portion of the recording of the relevant events which was presented at trial, preventing plaintiff from effectively arguing his case.  (See Pl.'s Mot. for New Trial Based on Surprise and Fraud by Opposing Party (Docket No. 214).)  Second, plaintiff argues that he is entitled to a new trial because counsel for defendants committed fraud by knowingly misrepresenting that the DOC does not have a system tracking complaints brought by inmates against specific employees of the Department of Corrections.  (See Pl.'s Supplemental Mot. for a New Trial (Docket No. 221).)

### 1. The Allegedly Altered Security Camera Recording

Jacobs claims that the incident in Cell 10-11 was recorded on a hand-held camcorder, and that the copy of the recording played at trial was altered by defendants to remove a portion of the footage which plaintiff seeks to present to show that the force used against him by the COs was

---

³ Rule 60(b)(1) relief has been applied liberally to a variety of situations.  11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 2858 (2d ed. 1995).  The court notes, however, that this is not a situation in which the moving party was "deprived of the opportunity to present the merits of the claim because of a technical error or slight mistake," which are the typical circumstances afforded Rule 60(b)(1) relief.  Id.

unreasonable.

Here, plaintiff offered no evidence or argument about how the recording was allegedly altered, and most crucially, what events are absent which would have helped him prove his case if he had been allowed to present them to the jury.  In his motion plaintiff states only that he "realized something was amiss" when he viewed the recording in court, but does not offer any proof or identify what was allegedly deleted from the recording and how this would have affected his case.  (Pl.'s Mot. for New Trial Based on Surprise and Fraud by Opposing Party (Docket No. 214) ¶ 5.)  Under these circumstances, it would be speculation for the court to consider plaintiff's assertion that he was prevented from adequately presenting his case in order to satisfy the second prong of the requirements for a Rule 60(b) motion.  There is no proper basis for the court to order the relief requested by plaintiff.

### 2. DOC Records

The allegations that counsel for defendants committed fraud by lying to plaintiff and to the court were already addressed in Part I.B.3.  For the reasons explained, counsel for defendants did not make any fraudulent statements.  The representations by counsel for defendants are consistent with the evidence of record.  Accordingly, there is no basis for granting plaintiff relief pursuant to Rule 60.[4]

---

[4] To the extent plaintiff seeks sanctions pursuant to Rule 37 in his supplemental motion for a new trial (Docket No. 21), the court denies the motion.  As explained, the court does not find that counsel for defendants made any misrepresentations or engaged in fraud.  Since there is no basis upon which the court can find wrongdoing on the part of counsel for defendants with respect to the issues raised in the motion, the request for sanctions is denied.

## **ORDER**

Therefore, this 17th day of March, 2010, IT IS HEREBY ORDERED that plaintiff's motion for trial transcripts (Docket No. 211) is GRANTED. Payment for the cost of producing the transcripts is to be made from the court's pro hac vice fund. If plaintiff is successful in this case and receives funds from the defendant, plaintiff is responsible for paying back the cost of producing the transcripts.

IT IS FURTHER ORDERED that plaintiff's motion for a new trial pursuant to Federal Rule of Civil Procedure 59(a) (Docket No. 212), plaintiff's motion for new trial based on surprise or fraud by opposing party pursuant to Federal Rule of Civil Procedure 60(b) (Docket No. 214), and plaintiff's supplemental motion for new trial and/or request for sanctions based upon fraud by opposing counsel pursuant to Federal Rules of Civil Procedure 37, 59, and 60 (Docket No. 221) are DENIED.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge